UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AETNA INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CORCEPT THERAPEUTICS, INCORPORATED,<br><br>        Defendant. | Case No. 25-cv-02590-NW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: ECF No. 13 |

On April 16, 2025, Defendant Corcept Therapeutics, Inc. ("Corcept") removed this case from the Superior Court for the County of Alameda ("Alameda Superior Court") to this Court. ECF No. 1. Plaintiffs Aetna Inc., Health Care Service Corporation, Humana Inc., and Molina Healthcare Inc. (collectively "Plaintiffs") timely moved to remand the action back to state court. ECF No. 13. Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b) and VACATES the hearing set for August 20, 2025. The Court GRANTS Plaintiffs' motion to remand for lack of subject matter jurisdiction.

**I.    BACKGROUND**

Plaintiffs allege that Corcept engaged in years of anticompetitive conduct by frustrating third-party efforts to launch and effectively market generic alternatives to Corcept's drug Korlym. Compl. ¶¶ 462-63, ECF No. 1-2. Plaintiffs are a consortium of health plans who allege that Corcept's conduct has forced them to pay "supracompetitive" prices for Korlym. Mot. at 2; Compl. ¶¶ 462-63. Among other things, Plaintiffs allege that Corcept "fraudulently manipulated the patent system . . . and abused the courts through sham litigations that served no purpose except to delay competition." Compl. ¶ 5; *see also Corcept Therapeutics, Inc. v. Teva Pharmaceuticals*

1  *USA, Inc.*, No. 1:18-cv-03632-RMBLDW (D.N.J. 2018) (the "Patent Action"). Plaintiffs'
2  complaint specifically alleges six causes of action, all arising under state law: (1) violation of Cal.
3  Bus. & Prof. Code § 17200, (2) a violation of Cal. Bus. & Prof. Code § 16600, (3) conspiracy and
4  restraint of trade under state competition law, (4) monopolization under various state laws, (5)
5  violation of statutes governing unfair business practices, and (6) unjust enrichment. *Id.* ¶¶ 216-
6  273.

7        On February 10, 2025, Plaintiffs filed their complaint in the Superior Court for the County
8  of Alameda ("Alameda Superior Court"). *See id. generally.* Corcept timely filed a counterclaim[1]
9  requesting relief under the Declaratory Judgment Act. Notice of Removal, ECF No. 1. Corcept's
10 single counterclaim seeks a declaration that its decision to assert specific patents in the Patent
11 Action was not "objectively baseless." *Id.*; *see also* Opp. at 4. Such a declaration would negate
12 Plaintiffs' claims that Corcept engaged in fraud on the patent system or filed meritless litigations
13 as part of a larger antitrust scheme. Opp. at 1-2.

14       The same day it filed its counterclaim, Corcept timely removed the action to this Court
15 pursuant to 28 U.S.C. §§ 1338 and 1452. *Id.* Corcept contends that both the claims and
16 counterclaim arise under patent law thus conferring federal jurisdiction. Plaintiffs disagree and
17 moved the Court to remand the instant action back to the Alameda Superior Court pursuant to
18 § 1447(c). ECF No. 13.

19 **II.  LEGAL STANDARD**

20       "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of*
21 *Am.*, 511 U.S. 375, 377 (1994). A suit may be removed from state court to federal court only if
22 the federal court would have had subject matter jurisdiction over the case. 28 U.S.C. § 1441(a);
23 *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that
24 originally could have been filed in federal court may be removed to federal court by the

---

[1] Though California has abolished counterclaims, *see* Cal. Civ. P. Code §§ 428.80, 428.10, Corcept filed the "equivalent to a counterclaim" when it lodged a cross-complaint against Plaintiffs in Alameda Superior Court. *See* Notice of Removal at 2 n.1; Fed. R. Civ. P. 13. As they are substantively interchangeable, the Court refers to Corcept's cross-complaint claim as a counterclaim for simplicity's sake.

1  defendant."). Federal courts have original jurisdiction over civil actions "arising under any Act of
2  Congress relating to patents," *see* 28 U.S.C. § 1338, and that jurisdiction extends to "civil
3  action[s] in which *any party* asserts a claim [or counterclaim] for relief arising under" patent law,
4  28 U.S.C. § 1454 (emphasis added); *see also Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635,
5  644 (Fed. Cir. 2015).[2]

## III.  DISCUSSION

Corcept argues that removal was appropriate for two reasons: first, because its counterclaim independently confers this Court with jurisdiction under section 1454; and second, because Plaintiffs' state-law claims "arise under" federal patent law in accordance with sections 1331, 1337, and 1338. Neither reason is persuasive.

### A.  Corcept's Counterclaim Does Not Directly Arise Under Patent Law

Under section 1454, a civil action "may be removed" where "any party asserts a claim for relief arising under" patent law. 28 U.S.C. § 1454. Corcept argues that its counterclaim under the Declaratory Judgment Act "arises under" patent law because it requires the Court to consider "the scope and meaning of the claims asserted" in the Patent Action. Opp. at 4. For statutory purposes, a case can "aris[e] under" federal law in two ways: (1) where "federal law creates the cause of action asserted," and (2) in a "special and small category" of claims brought under state law "in which arising under jurisdiction still lies." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)). "For this second category of cases, 'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *MPHJ Tech. Invs.*, 803 F.3d at 645 (quoting *Gunn*, 568 U.S. at 258). This four-prong approach is known as the *Gunn* test.

Corcept argues that its counterclaim reaches federal court by means of the first option

---

[2] For these and all other jurisdiction statutes discussed herein, the term "arising under" has the same meaning. *Apollo Enter. Sols., Inc. v. Lantern Credit, LLC*, No. CV 17-02331-AB (JCX), 2018 WL 437472, at *5 (C.D. Cal. Jan. 16, 2018) (finding consistent interpretation of "arising under" in sections 1454, 1331, and 1338; *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir. 1984) (consistent interpretation between sections 1331 and 1337).

1   under *Christianson* (i.e., the cause of action is created by federal law), and not pursuant to the
2   four-prong *Gunn* test. *See* Opp. at 6 ("Corcept's federal Declaratory Judgment Act counterclaim
3   is not created by state law."). For Corcept to be correct, patent law must "create[] the cause of
4   action," thus animating its counterclaim. *Gunn*, 568 U.S. at 257. Corcept's counterclaim asks the
5   Court to issue a declaration that its decision to assert the underlying patents in the Patent Action
6   was not "objectively baseless." Despite Corcept's protestations, federal law has not created the
7   cause of action asserted in its counterclaim.[3]

As an initial matter, the Declaratory Judgment Act cannot confer federal jurisdiction. *Medtronic, Inc. v. Mirowski Fam. Ventures*, LLC, 571 U.S. 191, 197 (2014) (Declaratory Judgment Act does not "extend the jurisdiction of the federal courts."); *Armstrong v. Armstrong*, 696 F.2d 1237, 1238 (9th Cir. 1983) ("[A] case does not arise under federal law . . . when the federal question is merely an anticipated defense to a state lawsuit."). To determine whether a declaratory relief claim arises under federal law, courts "look to the character of the threatened action" and ask whether "a coercive action brought by the declaratory judgment defendant would necessarily present a federal question." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 & n. 19 (1983). In patent cases, declaratory judgment jurisdiction exists "where a patentee asserts rights under a patent . . . and where that party contends that it has the right to engage in the accused activity without license." *SanDisk Corp. v. STMicroelectronics Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Corcept states that courts "within the Ninth Circuit have applied Section 1454 to Declaratory Judgment Act counterclaims . . . without resort to the *Gunn* test," Opp. at 4. Corcept's cited cases do not support its argument. The first case Corcept cites for that proposition was reversed at the Federal Circuit because section 1454 "includes no language that justifies a

---

[3] Though Corcept states in its Notice of Removal that its counterclaim raises "substantial questions of federal patent law," Notice at 3, Corcept's opposition never takes that position. Corcept makes no assertion that its counterclaim might survive under the second *Christianson* avenue, *i.e.*, that the counterclaim may be a state court claim that still arises under federal law via the *Gunn* test. *See* Opp. at 7 n.3 (stating Corcept's "counterclaim is not created by state law"). As Corcept has not made this argument, the Court will not address it further.

1  treatment different from other removal statutes" that use the *Gunn* test.  *Intellisoft, Ltd. v. Acer*
2  *Am. Corp.*, 955 F.3d 927, 935 (Fed. Cir. 2020).  Likewise, the court in *Apollo Enter. Sols., Inc. v.*
3  *Lantern Credit, LLC* observed that "courts interpret[] the term 'arising under' in Section 1454 in a
4  manner similar to the more established interpretation in Sections 1331 and 1338" which apply the
5  *Gunn* test.  No. CV 17-02331-AB (JCX), 2018 WL 437472 (C.D. Cal. Jan. 16, 2018).  Corcept's
6  final case, *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, is inapplicable; while Corcept is correct
7  that the case omits any reference to the *Gunn* test, that is in part because plaintiff's counsel
8  conceded that defendant's counterclaim "raise[d] a question under the Copyright Act."  No. C20-
9  882-MLP, 2020 WL 5269946, at *2 (W.D. Wash. Sept. 4, 2020).

10  The question becomes, then, whether the "coercive" action brought by Corcept necessarily
11  presents a federal question.  Despite Corcept's statement that its "counterclaim arises under an act
12  of Congress; *i.e.* the Patent Act," it simply does not.  Corcept's counterclaim does not cite to the
13  typical patent statutes, 35 U.S.C. §§ 101 (patentable subject matter), 102 (anticipation), and 103
14  (obviousness).  In fact, the counterclaim does not cite to ***any*** federal statute, patent or otherwise.  It
15  is unclear how any version of Corcept's counterclaim seeking a declaration could be coercive
16  given how clearly the "claim" relates to Plaintiffs' sham litigation allegations.  Corcept is
17  attempting to "plead a federal cause of action for declaratory relief as to a state law controversy as
18  an end run around the restrictions of federal subject matter jurisdiction."  *Armeni v. Am.'s*
19  *Wholesale Lender*, No. SACV 11-1317 DOC SHX, 2012 WL 1570112, at *2 n.1 (C.D. Cal. May
20  2, 2012). Courts have uniformly shut down such attempts.

21  The reasoning of the Ninth Circuit in *Alton Box* confirms this result.  There, plaintiff filed
22  a declaratory judgment action in federal court as part of its effort to defend against a state court
23  action asserting state antitrust violations.  *Alton Box Board Co. v. Esprit de Corp.*, 682 F.2d 1267,
24  1274 (9th Cir.1982).  The Ninth Circuit found that "the district court lacked jurisdiction to enter a
25  declaratory judgment" because plaintiff filed the action solely to establish a defense to a state
26  court claim "which manifestly ar[ose] under state law."  *Id.*  As the Ninth Circuit held, "[a] claim
27  does not arise under federal law within the meaning of section 1331 where it relies on federal law
28  only to establish an immunity or defense which would preclude the declaratory judgment

5

1    defendant from successfully litigating against the declaratory judgment plaintiff a claim arising
2    under state law." *Id.*

3    That reasoning applies with equal force where section 1454 confers jurisdiction instead of
4    section 1331. Just as in *Alton Box*, Corcept's counterclaim serves only as a defense to Plaintiffs'
5    state court claims. The only relevant difference between *Alton Box* and the instant case is that the
6    plaintiff in *Alton Box* filed his declaratory judgment as a freestanding action in federal court.
7    Here, section 1454 allows Corcept to bring its declaratory action as a counterclaim, but the
8    circumstances are otherwise identical. Because Corcept's counterclaim is merely an attempt to
9    mount a defense to Plaintiffs' state law antitrust claims, the counterclaim does not confer
10   jurisdiction, even in light of section 1454.

### B.     Plaintiffs State Law Claims Do Not Arise Under Federal Law

Corcept separately argues that removal to federal court is appropriate because Plaintiffs' state-law claims "arise under" federal patent law in accordance with sections 1331, 1337, and 1338. As noted above, under the four-pronged *Gunn* test, "federal jurisdiction over a state law claim will lie if a federal issue is: '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). If all four requirements are met, "federal jurisdiction exists because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Cnty. of San Mateo v. Chevron Corp*., 32 F.4th 733, 746-47 (9th Cir. 2022), *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty., Cal.*, 143 S. Ct. 1797 (2023) (internal quotations and citations omitted).

Corcept alleges that there is federal jurisdiction over Plaintiffs' state law claims because Corcept has presented two categories of federal issues that satisfy the *Gunn* test: (1) federal antitrust issues and (2) federal patent and FDA regulatory issues. The Court considers each category separately.

### *1.     Federal Antitrust Issues*

Federal antitrust issues fail to confer jurisdiction under *Gunn* because those issues are not "necessarily raised" by any of Plaintiffs' claims as required under *Gunn*'s first element. Specifically, Corcept contends that Plaintiffs' "claims under the 'unfair' prong" of the UCL "necessarily raise issues of federal antitrust law" because the underlying allegations—namely Corcept's abuse of its monopoly position to sell Korlym at supracompetitive prices—are only cognizable under the Sherman Act, not under California law. Opp. at 7-8. But, Plaintiffs argue one way to sufficiently allege a UCL unfair prong claim is to allege, as Plaintiffs did here, that a defendant's actions "significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *see also PeopleBrowsr, Inc. v. Twitter*, No. C-12-6120 EMC, 2013 WL 843032, at *4 (N.D. Cal. Mar. 6, 2013) (concluding that "a violation of the unfair prong of the UCL does not necessarily require establishing a violation of the Sherman Act").

Corcept concedes that such an avenue is available but maintains that a UCL unfair prong claim predicated on an abuse of monopoly position "requires establishing a violation of federal antitrust law." *Rosenman v. Facebook Inc.*, No. 21-CV-02108-LHK, 2021 WL 3829549, at *4 (N.D. Cal. Aug. 27, 2021). Because such "conduct is only actionable under Section 2 of the Sherman Act," Corcept argues that in this case, "Plaintiff's UCL unfair prong claim necessarily raises a federal issue." *Id.* at *5.

Plaintiff points to a recent decision in this district that considered these exact arguments on analogous facts, *Molina Healthcare, Inc. v. Celgene Corp.*, No. 21-CV-05483-JCS, 2022 WL 161894, at *4 (N.D. Cal. Jan. 18, 2022). *See* Mot. at 2. Like this case, the defendant in that action is a drug developer that allegedly pursued a sham patent litigation strategy as part of a scheme to protect the market for its own prescription drugs. *Id.* at *1-4. Like this case, plaintiff alleges a UCL unfair prong claim and relies on "purportedly sham cases as one basis for liability." *Id.* And like this case, defendant relied mostly on two other cases in this district to argue that the UCL claim raised a federal issue. *In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No.

7

1 CV1509996BROJEMX, 2016 WL 1192642, at *5 (C.D. Cal. Mar. 28, 2016) and *Rosenman*, 2021
2 WL 3829549, at *3.

3 The Court finds *Molina* well-reasoned and persuasive. Plaintiffs rightly point out that
4 Corcept's opposition fails to mention *Molina*, despite its frequent reference in Plaintiffs' initial
5 motion. *See* Mot. at 2-3, 6. *Molina* convincingly distinguished Corcept's cases, ultimately finding
6 that "[n]either *Sunday Ticket* [nor] *Rosenman* . . . provides a wholly satisfactory treatment of
7 whether an 'unfair' claim under *Cel-Tech* necessarily raises a federal issue if it is based on
8 allegations of monopolization." *Molina*, 2022 WL 161894, at *10. *Molina* found, and the Court
9 agrees, that the cases "did not meaningfully address the 'otherwise significantly threatens or harms
10 competition' portion of *Cel-Tech*," rendering their analysis inapplicable. *Id.* Thereafter, the court
11 concluded that:

> It may be that the monopolization and attempted monopolization that Molina has alleged . . . would likely also violate the Sherman Act. But so what? A court would not inevitably need to address that question in order to consider whether the conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or "whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1214–15 (9th Cir. 2020*)*. Even if it were logically necessary that any monopolistic conduct that met those tests would also violate the Sherman Act, that would not mean the court addressing the claim had any need to *consider* the Sherman Act. The Court therefore concludes that no federal issue is necessarily raised by Molina's UCL claims.

19 *Id.* at *11. This reasoning applies with equal weight to the instant case; no federal issue is
20 necessarily raised by Plaintiffs' UCL claims here.

21 **2.    *Federal Patent and FDA Regulatory Issues*.**

22 Though Plaintiffs may raise issues of federal patent and FDA regulatory issues, these
23 issues are not substantial as required under the third element of *Gunn*.

24 There are only a small set of circumstances in which a state claim raises a substantial
25 question of federal law. *See Oakland*, 969 F.3d at 905. Courts have found "arising under"
26 jurisdiction in cases where the underlying claims: (1) went to the interpretation or validity of a
27 federal statute, (2) challenged the functioning of a federal agency or its actions, (3) directly
28 questioned a statute's constitutional validity, or (4) was both dispositive in the instant action and

8

controlling in numerous other cases. *Id.* (citations omitted). "By contrast, a federal issue is not substantial if it is fact-bound and situation-specific or raises only a hypothetical question unlikely to affect interpretations of federal law in the future." *Id.* (internal quotations and citations omitted). Nor is a claim substantial "merely because of its novelty, or because it will further a uniform interpretation of a federal statute." *Id.* (internal citations omitted). "The crux of the substantiality inquiry is about 'the importance of the issue to the federal system as a whole.'" *Kunz v. Aoki*, No. 221CV01502TLNCKD, 2021 WL 4860762, at *3 (E.D. Cal. Oct. 19, 2021) (quoting *Gunn*, 568 U.S. at 260).

According to Corcept, Plaintiffs' claims are likely to be controlling in numerous other cases because they implicate a supposedly "important and unsettled issue at the intersection of federal patent and regulatory law." Opp. at 13. That question relates to a single regulation, 21 C.F.R. § 314.53, and, critically, is situation-specific, confined only to the facts alleged in Plaintiffs' complaint. The real question a trier of fact must answer in this case is whether Corcept's ***reasons*** for listing specific patents in the Orange Book for Korlym ran afoul of its own interpretation of that regulation, or at least a reasonable interpretation. It is one factual consideration among many others that goes to whether Corcept fraudulently listed patents in the Orange Book. *See*, *e.g.*, Compl. ¶ 107 (alleging Corcept CFO admitted on an earnings call that relevant patents did not have "a direct read on the Korlym label" as required for listing in the Orange Book). This question does not require the Court to interpret a federal regulation; instead, it requires a fact finder to consider whether Corcept actually relied on the regulation when it chose to list its patents in the Orange Book. *See, e.g.*, Compl. ¶ 107. For example, the facts may show that Corcept conjured the interpretation they currently advance as an after-the-fact excuse for its anticompetitive conduct. Though such an inquiry implicates regulatory interpretation, it is plainly a fact-based analysis.

Despite Corcept's insistence, the narrow issue raised by Plaintiffs in this case, alleging specific conduct by Corcept related to its drug Korlym, does not appear to be an issue of importance to the federal system as a whole. *See* Reply at 8. To that point, Corcept's opposition fails to raise even "a *single case* in which this 'important question' [of regulatory interpretation] is

9

at issue." *Id.* The only evidence Corcept referenced is an FDA Request for Comments from five years ago entreating "public input on 14 questions regarding a variety of issues regarding listing in the Orange Book, only one of which" went directly to Corcept's concern. That is plainly insufficient. "[I]t is not enough to suggest that there is an interest in uniform application of patent law, or that the federal courts are uniquely-situated to resolve the patent law question presented." *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1382 (Fed. Cir. 2020) (citing *Gunn*, 568 U.S. at 261-62). "If that were enough to support a finding of 'substantiality,' we would find jurisdiction in any case implicating a patent law issue." *Id.* For those reasons, the Court declines to make such a finding.

*Louisiana v. Pfizer, Inc*. came to the same conclusion on identical facts:

> Plaintiff's state law anti-trust and unfair trade practices claims are based on the defendants' alleged improper patent submissions in the Orange Book and filing sham lawsuits against potential generic competitors. Defendants argued that these allegations will require an examination of the patents covering Neurontin. However, the plaintiff's claims do not challenge the actual validity of the patents but rather contest the reasonableness of the defendants' Orange Book submissions and subsequent lawsuits against allegedly unauthorized manufacturers. The court's analysis will likely focus on the reasons the defendants believed the patents were applicable to Neurontin. Any patent review which may occur as a part of this inquiry is insufficient to satisfy the substantiality requirement of *Grable* and *Gunn*.

No. CV 15-327-JWD-SCR, 2015 WL 10012989, at *5 (M.D. La. Sept. 2, 2015), *report and recommendation adopted,* No. CV 15-00327-BAJ-EWD, 2016 WL 521533 (M.D. La. Feb. 5, 2016). Accordingly, issues related to specific Orange Book listings are not substantial, and do not confer federal jurisdiction.

## IV.   CONCLUSION

The Court notes that the underlying facts and the majority of the claims in this action are identical to those brought by Teva in a related case. Nevertheless, the similarity between these cases is not enough to confer jurisdiction to the Court. *See Aetna Inc. v. Gilead Scis., Inc.*, 599 F. Supp. 3d 913, 929 (N.D. Cal. 2022). Plaintiffs are the masters of their own complaint; they may, by eschewing claims based on federal law, choose to have the cause heard in state court. *Caterpillar Inc.*, 482 U.S. at 398-99.

The Court grants Plaintiffs' motion, ECF No. 13, and remands this action to Alameda Superior Court.

**IT IS SO ORDERED.**

Dated: August 18, 2025

_____
Noël Wise
United States District Judge